UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

**RUSTY WEDDLE**                                                            **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 1:15CV-P9-GNS**

**BOBBY DUNBAR** *et al*.                                    **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Rusty Weddle, a prisoner proceeding *pro se*, *in forma pauperis*, filed an action under 42 U.S.C. § 1983 (DN 1).  This action is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons set forth below, the Court will allow the access-to-courts claim and the legal-mail claim seeking monetary damages to proceed against Defendant Dunbar in his individual capacity.  All other claims and Defendants will be dismissed from this action.

## I.  <u>STATEMENT OF THE CASE</u>

Plaintiff Weddle brings his action against nine Defendants:  (1) Bobby Dunbar, the Jailer at the Russell County Detention Center (RCDC); (2) Gary Robertson, the Russell County Judge Executive; (3) Russell County, Kentucky; (4) Nick York, a deputy at the RCDC; (5) Melissa McGowan, a deputy at the RCDC; (6) Scott Hadley, a deputy at the RCDC; (7) Skyler Silverman, a deputy at the RCDC; (8) Sandy Johnson, a deputy at the RCDC; and (9) John and/or Jane Doe(s), employees of the "county and/or state facility(s)."  Plaintiff sues all Defendants in their official capacities.  In addition, he sues Defendants Dunbar, Robertson, Russell County, Kentucky, and John and/or Jane Doe(s) in their individual capacities.  Plaintiff

seeks monetary and punitive damages, and "[a]ny monitary or non-monitary relief abailable by law, imediate release of custody and dismissal of all charges."

In his complaint, Plaintiff states as follows:

During my incarseration at the Russell County Detention Center I have been denied copies, a notary, and access to law and legal mail/materials.  My legal mail, legal materials and KRS law book was confiscated by several officers who stated they were given orders by the Jailer to take any and all legal materials from cell 148.  Me and one other inmate were singled out from everyone in the Jail.  Only our legal materials were taken.  Among these items were my motion of Discovery marked confidential, my 11.42 packett and several motions that I was in the process of filing Pro se.  I did not and still do not have a apointed attorney due to conflict and the Jailer has done everything possible to prevent me from filing the motions I needed to file including one motion that was to be filed within a time frame.  I have been denied due process and Judicial process.  I have filed multiple Grievances and received only two responses and one of those were confiscated and never returned.  Also, there were many other documents confiscated and never returned.  I had physical evidence stolen from me by the Russell Co. Jail.  While my legal materials were being taken and read by the officers, they also put my life in danger by dropping confidential documents in the middle of the floor for all the inmates in my cell to view letting them know that my charges are charges frowned upon by both inmates and society.  I was in the protective custody cell.  The RCDC is set up to where all protective custody must walk directly through the most violent inmates in the Jail.  This also put my life in danger walking through the Max Custody unattended by a officer.  There was also several different times that me and another inmate were asked to harm another inmate.  The Jailer has both physically and verbally threatened me and pushed me.  My mail has been openen while I was not present, mail that was legal mail sent from the Circuit Clerks Office, Department of Public Advocacy, Dept. of Community based Services and more.  I was also verbaly threatened by an officer that if I did not stop asking for the policy and procedure "things could get a lot worse" and that I "should let a sleeping dog be"  During the process of filing this all my legal materials were taken, I have been denied a six month statement from RCDC and denied a signature on the certificate of inmate funds.  I have had my mail and my motions taken and was then transferred to another jail several counties away.  My legal mail I received here is now being opened before it makes it to me and I am being denied access to the law.  The time aloud for me to file my 11.42 motion is almost up and I'm not sure if it ever made it to the Clerks office due to the fact that the Jailer confiscated all my legal mail and stated all my legal mail would be confiscated as I received it.

2

## II. <u>STANDARD OF REVIEW</u>

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604.  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 90 U.S. 319, 325 (1989).  The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless.  *Id.* at 327.  In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).  "But the district court need not accept a 'bare assertion of legal conclusions.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its

legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. <u>ANALYSIS</u>

#### A. *Official-Capacity Claims*

#### 1. *Eleventh Amendment Immunity*

Plaintiff sues John and/or Jane Doe(s) in their capacity as employees of the "county and/or state facility(s)."

Under the Eleventh Amendment to the U.S. Constitution,[1] a state and its agencies may not be sued in federal court, regardless of the relief sought, unless the state has waived its immunity or Congress has overridden it. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("This [Eleventh Amendment] withdrawal of jurisdiction effectively confers an immunity from suit. Thus, 'this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'") (quoting *Edelman v. Jordan*, 415 U.S. 651, 662–663 (1974)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("[I]f a lawsuit against state officials under 42 U.S.C. § 1983 alleges a constitutional claim, the federal court is barred from awarding damages against the state treasury even though the claim arises under the Constitution. Similarly, if a § 1983 action alleging a constitutional claim is brought directly against a State, the Eleventh Amendment bars a federal court from granting any relief on that

---

[1]"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "While the Amendment by its terms does not bar suits against a State by its own citizens, [the Supreme Court] has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

claim.") (citation omitted); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) ("There can be no doubt, however, that suit against the State and [one of its departments] is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit.").  The Commonwealth of Kentucky has not waived its immunity, *see Adams v. Morris*, 90 F. App'x 856, 857 (6th Cir. 2004), and in enacting § 1983, Congress did not intend to override the traditional sovereign immunity of the states.  *Whittington v. Milby*, 928 F.2d 188, 193-94 (6th Cir. 1991) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)); *see Ferritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, at *2 (6th Cir. Mar. 19, 1991) ("The Eleventh Amendment prohibits actions against states and state agencies under section 1983 and section 1985.").

The Eleventh Amendment similarly bars damages claims against state officials sued in their official capacity.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *McCrary v. Ohio Dep't of Human Servs.*, No. 99-3597, 2000 WL 1140750, at *3 (6th Cir. Aug. 8, 2000) (finding § 1983 and § 1985 claims against state agency and its employees in their official capacities for damages barred by Eleventh Amendment immunity).

Accordingly, to the extent they are sued in their capacity as employees of Kentucky or one of its agencies, the official-capacity claims seeking monetary damages brought against Defendants John and/or Jane Doe(s) are barred by Eleventh Amendment immunity, and these claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### 2. *Municipal Liability*

Plaintiff sues Defendants Dunbar; Robertson; Russell County, Kentucky; York; McGowan; Hadley; Silverman; Johnson; and John and/or Jane Doe(s) in their official capacities as employees of Russell County, Kentucky.

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)).  Suing the individual Defendants in their official capacities is the equivalent of suing their employer, Russell County.  *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that since the county police department is not an entity which may be sued, the county is the proper party); *Bradford v. Hammond*, No. 3:05CVP459-H, 2005 WL 2739154, at *2 (W.D. Ky. Oct. 21, 2005) (construing a claim against Louisville Metro Corrections as one brought against Louisville/Jefferson County Metro Government); *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (concluding that a suit against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive is actually a suit against Jefferson County itself).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).  The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994).  "The 'official

6

policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cnty.,Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, "a plaintiff must 'identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff has not alleged that a municipal policy or custom caused his alleged harm. As nothing in the complaint demonstrates any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Russell County, the complaint fails to establish a basis of liability against this municipality, and it fails to state a cognizable § 1983 claim.

Accordingly, the official-capacity claims against Defendants Dunbar; Robertson; Russell County, Kentucky; York; McGowan; Hadley; Silverman; Johnson; and John and/or Jane Doe(s) Will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Leaving no additional claims against Defendants Russell County, Kentucky; York; McGowan; Hadley; Silverman; and Johnson, these Defendants will be dismissed from this action.

### B.  Individual-Capacity Claims

#### 1.  Defendants Robertson and John and/or Jane Doe(s)

Plaintiff names Gary Robertson and John and/or Jane Doe(s) as Defendants in this action. However, Plaintiff makes no allegations against them in his complaint.  "It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation; the doctrine of *respondeat superior* has no application thereunder."  *Cox v. Barksdale*, No. 86-5553, 1986 WL 18435, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).  "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed . . . ."  *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights.").

Having failed to allege any conduct on the part of Defendants Robertson and John and/or Jane Doe(s) that violates Plaintiff's rights, these Defendants will be dismissed from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### *2.  Access-to-Courts Claim*

Plaintiff contends that he was denied copies, a notary, and access to legal materials, and that some of his legal books and materials were confiscated.  Plaintiff states that Defendant Dunbar ordered officers to confiscate his legal materials.  He further states that Defendant Dunbar "has done everything possible to prevent [him] from filing the motions [he] needed to file including one motion that was to be filed within a time frame."  Plaintiff states that his "motion of Discovery marked confidential, his 11.42 packett and several motions that [he] was in the process of filing Pro se" were included among the confiscated documents.  Plaintiff further states that "[t]he time aloud for [him] to file [his] 11.42 motion is almost up and [he is] not sure if it ever made it to the clerks office . . . ."

Upon consideration, the Court will allow the access-to-courts claim to proceed against Defendant Dunbar in his individual capacity.

### *3.  Grievance Claim*

Plaintiff states that he has filed multiple grievances, but he has received only two responses.  It is unclear what constitutional violation Plaintiff is alleging based on this allegation.  Presuming that Plaintiff is claiming a constitutional right to have his grievances answered, his claim fails.  Prisoners do not possess a constitutional right to a prison grievance procedure.  *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure."); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"); *Antonelli v. Sheahan*, 81 F.3d

1422, 1430 (7th Cir. 1996) (finding that plaintiff's allegation that the institution's grievance procedures were inadequate to redress his grievances did not violate the Due Process Clause and did not "give rise to a liberty interest protected by the Due Process Clause"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that "no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration"). Nor does state law create a liberty interest in the grievance procedures. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Further, if the prison provides a grievance process, violations of its procedures or its ineffectiveness do not rise to the level of a federal constitutional right. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (stating that "there is no inherent constitutional right to an effective prison grievance procedure") (citing cases).

Accordingly, Plaintiff's claim regarding his unanswered grievances will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 4. *Stolen-Evidence Claim*

Plaintiff states that he had "physical evidence stolen from [him] by the Russell Co. Jail." He further states that his legal materials and KRS law book were confiscated by several officers at the direction of Defendant Dunbar.

The Supreme Court has held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*,

10

451 U.S. 527 (1981), *rev'd on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986).  In order to assert a claim for deprivation of property without due process pursuant to 42 U.S.C. § 1983, a plaintiff must allege that the state post deprivation procedures are inadequate to remedy the deprivation.  *Parratt v. Taylor*, 451 U.S. 543-44.  The law of this circuit is in accord.  The court held that "[i]n § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate."  *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983).  The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*.  *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).  The same rationale applies to claims under the Fifth Amendment Takings Clause; that is, no taking has occurred absent a showing that available remedies have been pursued and have failed to provide adequate compensation.  *Hudson v. Palmer*, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring).

> As explained by Justice O'Connor,
>
> [A] mere allegation of property deprivation does not by itself state a constitutional claim under either [the Due Process or Takings] Clause.  The Constitution requires the Government, if it deprives people of their property, to provide due process of law and to make just compensation for any takings.  The due process requirement means that Government must provide to the inmate the remedies it promised would be available.  Concomitantly, the just compensation requirement means that the remedies made available must adequately compensate for any takings that have occurred.  Thus, in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate.  When adequate remedies are provided and followed, no uncompensated taking or deprivation of property without due process can result.

*Hudson v. Palmer*, 468 U.S. at 539 (citations omitted).[2]  Plaintiff has failed to demonstrate an inadequacy of state remedies in the case at bar.

To the extent Plaintiff may be seeking to have criminal charges brought against Defendants, he also fails to state a claim upon which relief may be granted.  "It is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General."  *Powell v. Katzenbach*, 359 F.2d 234, 234 (D.C. Cir. 1965).  The Court does not have the power to direct that criminal charges be filed against anyone as Plaintiff requests.  *Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972).

Therefore, the claim for the stolen and confiscated personal property will be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 5. Failure-to-Protect Claim

Plaintiff states that his life is in danger.  He states that he is in a protective cell.  According to Plaintiff, some officers dropped confidential documents on the floor "for all the inmates in [his] cell to view letting them know that [his] charges are charges frowned upon by

---

[2]Justice O'Connor further explained as follows:

When a person is arrested and incarcerated, his personal effects are routinely "searched," "seized," and placed in official custody.  Such searches and seizures are necessary both to protect the detainee's effects and to maintain the security of the detention facility.  The effects seized are generally inventoried, noticed by receipt, and stored for return to the person at the time of his release.  The loss, theft, or destruction of property so seized has not, to my knowledge, ever been thought to state a Fourth Amendment claim.  Rather, improper inventories, defective receipts, and missing property have long been redressable in tort by actions for detinue, trespass to chattel, and conversion.  Whether those remedies are adequate and made available as promised have always been questions for the Takings and Due Process Clauses.  The Fourth Amendment has never had a role to play.

*Hudson v. Palmer*, 468 U.S. at 540 (citations omitted).

12

both inmates and society." He also states that "the RCDC is set up to where all protective custody must walk directly through the most violent inmates in the Jail. This also puts my life in danger walking through the Max custody unattended by a officer."

Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Thus, with the passage of the PLRA, Congress required that there must be a showing of physical injury in order to bring an action for emotional injury. *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004); *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003); *Pryor v. Cox*, No. 97-3912, 1999 WL 1253040 (6th Cir. Dec. 13, 1999); *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999); *Zehner v. Trigg*, 133 F.3d 459, 461 (7th Cir. 1997); *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997). The Sixth Circuit has "indicated that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010).

Plaintiff's allegations regarding the documents being dropped and having to walk through "Max custody unattended by a officer" allege some fear of potential harm on the part of Plaintiff. He does not state that any other inmate viewed the documents on the floor or took any action against him as a result thereof. He does not state that he has ever been injured or even threatened walking through the maximum custody area. Plaintiff has failed to set forth any physical injury he suffered as a result of the circumstances he alleges place his life in danger. "A speculative injury does not vest a plaintiff with standing." *King v. Deskins*, No. 99-6381, 2000 WL 1140760, at *2 (6th Cir. Aug. 8, 2000).

Accordingly, the claims regarding placing his life in danger, will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 6. Solicitation-to-Harm Claim

Plaintiff states that "there were several different times that [he] and another inmate were asked to harm another inmate."

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  Plaintiff fails to allege what constitutional right or law of the United States has been violated as pertains to this allegation.

Accordingly, the claim regarding being asked to harm another inmate will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 7. Threatened-and-Pushed Claim

Plaintiff states that Defendant Dunbar "both physically and verbally threatened and pushed [him]."  He also alleges that he was verbally threatened by an officer.

For a pretrial detainee like Plaintiff, "[d]ue process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979).  The Cruel and Unusual Punishments Clause does not apply to pretrial detainees. *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  However, pretrial detainees are shielded from cruel and unusual punishment by the Due Process Clause of the Fourteenth Amendment, which provides

14

similar if not even greater protection than the Cruel and Unusual Punishments Clause. *Id.*
However, the Sixth Circuit applies the Eighth Amendment standard for pretrial detainees "for the
sake of simplicity." *Id.*

The Eighth Amendment prohibits a punishment that violates civilized standards of
decency or reflects unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97,
102-03 (1976). However, "[n]ot every unpleasant experience a prisoner might endure while
incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth
Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

A viable Eighth Amendment claim has both an objective and a subjective component.
*Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the pain
be sufficiently serious within the context of "contemporary standards of decency." *Hudson v.
McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted). The subjective
component requires a plaintiff to show that the defendant acted with deliberate indifference to
the inmate's health or safety, *i.e.*, the plaintiff must show that prison officials had a "sufficiently
culpable state of mind," where the officials were aware of and disregarded an excessive risk to
an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834 (internal quotation marks and
citation omitted).

As for the alleged threats, verbal harassment does not give rise to a constitutional
violation. *Ivey v. Wilson*, 832 F.2d at 955; *see also Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x
453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a
constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson
v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (acknowledging that "harassment and

verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits").

Plaintiff also alleges that Defendant Dunbar pushed him.  He does not state that this push caused any injury.  Not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson v. McMillian*, 503 U.S. at 9.  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Id.*  An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.  *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Taylor v. Larson*, 505 F. App'x 475, 478 (6th Cir. 2012) (upholding the district court's finding that being placed in shackles while being moved to the segregation unit did not violate the Eighth Amendment since Taylor failed to allege that he suffered any pain from the shackles); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005) (upholding the district court's finding that being held in a "strip cage for twelve hours" did not violate the Eighth Amendment since the evidence did not permit a finding that any injury suffered by Jarriett was more than *de minimis*).

Further, as previously discussed, 42 U.S.C. § 1997e(e) requires that there be a showing of physical injury in order to sustain an action under § 1983 for emotional or mental injury.  *Jennings v. Mitchell*, 93 F. App'x at 725; *Adams v. Rockafellow*, 66 F. App'x at 586.  Having failed to allege any injury resulting from the alleged push by Defendant Dunbar, Plaintiff fails to state a claim.  *See King v. Deskins*, 2000 WL 1140760, at *2 ("A speculative injury does not vest a plaintiff with standing . . . .").

Accordingly, the claims regarding verbally threatening and pushing Plaintiff will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 8. Transfer Claim

In his complaint, Plaintiff makes a statement about being transferred "to another jail several counties away." It is unclear whether he is attempting to allege a claim or if this statement is in support of another one of Plaintiff's claims.

If Plaintiff is attempting to allege a separate claim about being transferred, this claim fails. The law is clear that inmates have no constitutional right to be incarcerated in any particular institution or a particular part of an institution unless the state has created a liberty interest in remaining at a particular institution. *Olim v. Wakinekona*, 461 U.S. at 245-48; *Montanye v. Haymes*, 427 U.S. 236, 242 (1976); *Meachum v. Fano*, 427 U.S. 215, 223-229 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). This is not the case in Kentucky where transfer of prisoners is within the discretion of the corrections cabinet. Ky. Rev. Stat. § 197.065.

Accordingly, the claim regarding transfer to another jail will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 9. Legal-Mail Claim

As to his legal mail, Plaintiff states as follows: (1) his legal mail was confiscated by several officers; (2) his legal mail from "the circuit clerks office, Department of Public Advocacy, Dept. of Community based Services and more" was opened while he was not present; and (3) the legal mail he "received here is now being opened before it makes it to [him] .

. . ." Plaintiff states that Defendant Dunbar "confiscated all [his] legal mail and stated all [his] legal mail would be confiscated as [he] received it."

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). However, "[p]rison officials may, of course, impose restrictions that are 'reasonably related' to the prison's security needs or other 'legitimate penological objectives.'" *Id.* (citations omitted). The Sixth Circuit noted, "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993).

> The Supreme Court and this Circuit have repeatedly held that a prisoner has some First Amendment rights to receive mail, subject to the right of prison officials to open a prisoner's incoming mail in accordance with uniformly applied policies deemed appropriate to maintain prison security. That case law has also acknowledged that the opening of "legal mail" should generally be in the inmate's presence in accordance with appropriately drafted and uniformly applied regulations.

*Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Upon consideration, the Court will allow the First Amendment legal-mail claim to proceed against Defendant Dunbar in his individual capacity.

### C. *Release from Custody and Dismissal of Charges Relief*

In *Preiser v. Rodriguez*, state prisoners sought, through filing both an action under 42 U.S.C. § 1983 and a habeas corpus action, restoration of their good-time credits that had been cancelled as the result of prison disciplinary proceedings. *Preiser v. Rodriguez*, 411 U.S. 475 (1973). In *Preiser*, the Supreme Court addressed whether habeas corpus is the exclusive remedy when a prisoner is challenging the fact or duration of his confinement. *Id.* The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release

18

from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500.   Such a challenge would be subject to the exhaustion requirements of a habeas corpus action. *Id*. at 489-93.

In the present case, Plaintiff asks for an immediate release from incarceration and dismissal of the charges against him.  Habeas corpus is his exclusive remedy for seeking to obtain such relief.

Accordingly, Plaintiff's claims for immediate release from incarceration and dismissal of the charges against him will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## IV.  <u>ORDER</u>

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:  (1) **the official-capacity claims against Defendants Dunbar; Robertson; Russell County, Kentucky; York; McGowan; Hadley; Silverman; Johnson; and John and/or Jane Doe(s)** are **DISMISSED** from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (2) **the official-capacity claims seeking monetary damages against Defendants John and/or Jane Doe(s)** are **DISMISSED** from this action pursuant to 28 U.S.C. § 1915A(b)(2) since they seek monetary relief from a Defendant who is immune from such relief; (3) **the grievance claim, stolen-evidence claim, failure-to-protect claim, solicitation-to-harm claim, threatened-and-pushed-claim, and transfer** claim are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and (4) the **claims seeking release from custody and dismissal of Plaintiff's criminal charges** are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Defendants Robertson; Russell County, Kentucky; York; McGowan; Hadley; Silverman; Johnson; and John and/or Jane Doe(s) are **DISMISSED** from this action since all of the claims against them have been dismissed.  The **Clerk of Court** is **DIRECTED** to terminate Defendants Robertson; Russell County, Kentucky; York; McGowan; Hadley; Silverman; Johnson; and John and/or Jane Doe(s) as parties from this action.

**IT IS FURTHER ORDERED** that the access-to-courts claim and the legal-mail claim seeking monetary damages will proceed against Defendant Dunbar in his individual capacity.

The Court will enter a separate Scheduling Order directing service and governing the development of the continuing claims.  In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date:  May 7, 2015

Greg N. Stivers, Judge
United States District Court

cc:     Plaintiff, *pro se*
        Defendants
        Russell County Attorney
        General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4416.003

20